The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ford. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the addition of Finding of Fact Number nine (9) and minor technical modifications.
* * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. On February 23, 1990, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date(s) the employer-employee relationship existed between the parties.
3. As of said date(s) Federated Mutual Ins. Co. provided the coverage to the employer as provided under said Act.
4. The alleged injury giving rise to the plaintiff's claim occurred on February 23, 1990.
5. On said date the plaintiff was earning an average weekly wage of $210.00.
6. That the issues to be determined in this case are:
a. Does the doctrine of equitable estoppel apply in this case;
b. Did the plaintiff sustain an injury by accident arising out of and in the course of her employment with the defendant-employer on February 23, 1990; and,
c. If so, are the injuries of which the plaintiff complains caused by the said accident; and,
d. If so, to what compensation is the plaintiff entitled under the Act.
7. The parties further stipulate into evidence a Form 19 dated March 9, 1990.
At the hearing on April 28, 1993, the parties introduced the following exhibits:
1. Plaintiff's Exhibit 1, marked P1, consisting of copies of two checks dated April 20, 1990 and April 19, 1990 respectively.
2. Plaintiff's Exhibit 2, marked P2, consisting of a letter dated December 12, 1990.
3. Plaintiff's Exhibit 3, marked P3, consisting of a letter dated July 31, 1990.
4. Defendants' Exhibit 1, marked D1, consisting of a Form 18 signed by the plaintiff.
At the hearing on April 28, 1993, the plaintiff entered the plea of equitable estoppel, and the defendant moved that said plea be set aside, which Motion is allowed and plaintiff's plea of equitable estoppel is hereby set aside and dismissed, to which ruling the plaintiff excepts and objects.
Subsequent to the hearing on April 28, 1993 the parties entered the following documentation into the record:
1. Deposition of E. Brown Crosby, M.D. dated May 19, 1993.
2. Deposition of Daniel Eglinton, M.D. dated December 22, 1992.
3. Deposition of Gregory J. Dray, M.D. dated March 23, 1992.
4. Deposition of Thomas W. Amsden, M.D. dated June 30, 1993.
5. Deposition of Cecil Durham, Jr., M.D. dated June 9, 1993.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On February 23, 1990, the plaintiff, fifty-seven years of age with a twelfth grade education who had been working for the defendant-employer since November 15, 1988, was employed by the defendant-employer as a cook.
2. On said date of February 23, 1990 as the plaintiff was working with cold chicken in a sink filled with cold water, at which task she had been working for about thirty minutes, a fellow employee suddenly turned hot water on which went onto the plaintiff's left hand causing her great pain and a feeling as though an electric shock ran up her arm.
3. She reported the incident to her supervisor, but finished out her shift as the day was Friday, and the incident occurred near the end of her shift.
4. Over the weekend, the plaintiff continued to experience pain in her left hand but returned to work on Monday, February 26, 1990, and although continuing to experience discomfort and pain, she continued to do her work duties with the assistance of her fellow employees until March 8, 1990, when she was medically released from work because of her hand condition.
5. The plaintiff first sought medical care and treatment on March 2, 1990, when the pain in her left hand persisted and, hereafter, continued to work until March 8, 1990 for the defendant-employer, when she was medically released from work as above-stated.
6. Subsequent to March 2, 1990, the plaintiff has been medically examined, treated, and expert medical opinions have been gathered from many physicians of whom five have testified in this proceeding and whose depositions appear in the record and have been carefully considered by the undersigned and which display a divergence of opinion with respect to the plaintiff's left hand and left upper extremity condition and the cause therefore.
7. Prior to February 23, 1990, the plaintiff was suffering from a vascular condition medically designated as peripheral vascular disease which decreased the blood flow to the soft tissue portions of the fingers of the plaintiff's left hand which condition did not effect the plaintiff so as to prevent her from performing the duties of her employment with the defendant-employer.
8. The incident on February 23, 1990 affected and exacerbated this pre-existing condition so as to cause the plaintiff to suffer with the discomfort and pain to her left hand and ultimately her left upper extremity including her left shoulder, resulting in the diagnostic arthroscopic surgery to her left shoulder on July 14, 1992, and the medically defined disease of reflexive sympathetic dystrophy which she developed subsequent to February 23, 1990 and from which she is presently suffering.
9. Plaintiff has a significant history of smoking two packs a day. At the time of the hearing before Deputy Commissioner Ford, Plaintiff had not quit smoking but was down to one pack a day. Dr. Burton, Dr. Dray, Dr. Eglington, Dr. Tate, and Dr. Crosby all advised Plaintiff to quit smoking and that, in fact, her hand condition would improve if she did quit smoking. While her smoking is a major contributing factor to her condition and her smoking increased the severity of her underlying atherosclerosis, there is no indication that cessation of smoking would restore normal blood flow to plaintiff's left arm and hand or that it would alleviate plaintiff's condition.
10. On February 23, 1990, the plaintiff sustained an injury by accident arising out of and in the course of the employment with the defendant-employer which has detrimentally affected her left hand and left upper extremity.
11. The plaintiff has not reached maximum medical improvement and has not been rated concerning any disability of her left hand or arm as of November 27, 1992.
12. The plaintiff has lost time from work as a result of the injury from March 8, 1990 to the time of the hearing before Deputy Commissioner Ford because of the injury to her hand which she sustained on February 23, 1990.
13. The plaintiff was earning an average weekly wage of $210.00 on February 23, 1990.
* * * * * * * * * * *
Based on the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On February 23, 1990, the plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant-employer.
2. In view of the fact that the plaintiff was working and functioning in her work duties without difficulty until February 23, 1990 when the incident occurred scalding her left hand and that she thereafter immediately began to experience pain and discomfort in her left hand and later in her left upper extremity and that there is medical evidence supporting the causal relationship, the incident on February 23, 1990 was the cause of the condition the plaintiff has experienced with her left hand and left upper extremity, including the disease of reflexive sympathetic dystrophy.
3. The plaintiff is entitled to the payment of all medical expenses incurred as a result of the injury which she sustained on February 23, 1990 and to future medical expenses which may tend to give relief, effect a cure, or lessen her disability.
4. The plaintiff is entitled to the payment of temporary total disability compensation benefits at the rate of $140.00 per week from March 8, 1990 until such time as she may no longer be totally disabled or return to the work force for gainful employment, or it is otherwise Ordered.
5. The defendants are entitled to a credit for the compensation paid to the plaintiff subsequent to February 23, 1990 against the compensation herein awarded.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. The defendants shall pay to the plaintiff temporary total disability compensation benefits at the rate of $140.00 per week from March 8, 1990 until such time as she may no longer be totally disabled or return to the work force for gainful employment, or it is otherwise Ordered, less the attorney fee and credit hereinafter provided.
2. The defendants shall pay all medical expense resulting from said injury up to the date of this Opinion and Award including all future medical expenses which may tend to give relief, effect a cure or lessen disability when the same have been appropriately processed by applying the Industrial Commission Fee Schedule to the submitted rates.
3. The defendants are allowed a credit for compensation paid to the plaintiff subsequent to February 23, 1990 against the compensation herein awarded.
4. An attorney fee of twenty-five percent of the compensation herein allowed subsequent to deducting the credit herein allowed is hereby approved and awarded to Thomas Ramer for his services to the plaintiff to be deducted from the compensation above-provided and paid directly to said attorney as follows:
a. By deducting same from amounts which have accrued; and
b. By, thereafter, paying every fourth compensation weekly check directly to said counsel with respect to that compensation which has not accrued.
5. The defendants shall pay the costs due this Commission.
 S/ _________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
S/ _________________________ JAMES J. BOOKER